United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDEN P. CLIDORO,

    Plaintiff,

    v.

KAISER PERMANENTE EMPLOYEE
BENEFIT PLAN, et al.,

    Defendant.
_____/

No. C 05-3789 PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND
MOTION FOR DISCOVERY**

The parties' cross-motions for summary judgment, and plaintiff's motion for leave to conduct discovery, came on for hearing before this court on August 9, 2006. Plaintiff appeared by her counsel Lawrence F. Padway, and defendants appeared by their counsel Michael N. Westheimer. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion and DENIES plaintiff's motions, as follows.

**BACKGROUND**

This is a case brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff Eden Clidoro seeks $50,000 in dependent life insurance benefits under defendant Kaiser Permanente Flexible Benefits Plan ("the Plan") (sued as Kaiser Permanente Employee Benefit Plan), based on the death of her husband, Leon Melendres.

Plaintiff participates in the Plan through her employment with Kaiser Foundation Health Plan ("Kaiser"). The Plan provides life insurance benefits for Kaiser employees and dependents, funded through a group policy of insurance issued to Kaiser by defendant Metropolitan Life Insurance Company ("MetLife").

Under the Plan, dependent life insurance is available, up to a maximum amount of $50,000. KFB 15, 27-28.[1] Requests for dependent benefits must be made within 31 days of a "qualifying event" – which in this case was plaintiff's marriage to her husband. KFB 34, 38. Plaintiff did not seek dependent benefits for Mr. Melendres at the time of "initial eligibility" (the time of the qualifying event), although she did seek health and dental coverage for him at that time. KFB 2.

The Plan rules permit a participant to enroll for dependent benefits after the initial eligibility date during annual enrollment periods designated by Kaiser. In that case, however, coverage is not automatic (as it is in the initial period), but takes place only if the participant provides MetLife with evidence of the dependent's good health. KFB 38-39. The evidence of good health must be satisfactory to MetLife, and is to be given at the participant's expense. Id. Dependent life benefits are not retroactive, and coverage does not take place until the first day of the month after the application process has been completed – that is, after the participant has provided MetLife with evidence of the dependent's good health, and MetLife has accepted the evidence as satisfactory, and after the first payroll deduction for that benefit has been made by the employer. KGB 37, 39.

Plaintiff and other Plan participants received various documents advising them that an election of benefits might require that they provide evidence of good health (evidence of insurability or "EOI"), and of the submission and approval process. One such document – "Benefits by Design, Benefits for You in 2000" – reminded participants that EOI was not required for an election of dependent life coverage at the initial eligibility date, but would be required if dependent life coverage for a spouse was waived at the initial eligibility date and

---

[1] The portion of the administrative record that comes from MetLife's files is designated "MET __" and the portion that comes from the Kaiser Plan's files is designated "KFB __."

2

1  then sought in a later enrollment period.  KFB 10-16.

2  In the September 1999 "Benefits by Design Newsletter," plaintiff and other Plan participants were notified of open enrollment procedures for election of benefits for the 2000 benefits year.  KFB 6.  The open enrollment period ran from October 11 through October 31, 1999.  During this period, Plan participants could make changes to their benefit coverage for the following year – January 1 though December 31, 2000.  The "Newsletter" stated, "This is the only newsletter you will receive so be sure to read this issue carefully and note the dates of Open Enrollment on your calendar.  You will receive your enrollment materials in late September."  Id.

In late September 1999, plaintiff and Plan participants received the "Benefits by Design" decision kit for 2000.  KFB 10.  In the section describing "Life Insurance Options," participants were again reminded that adding a spouse or domestic partner might require evidence of insurability, and that if MetLife required a health evaluation, the participant would be responsible for the cost of that physical evaluation.

> Evidence of insurability (EOI) confirms your good health as certified by a doctor.  You may be required to provide EOI for certain life insurance coverage levels.  If you are required to provide EOI, you'll receive an EOI form with your *Benefits for Design* Confirmation Statement after your enrollment.  Any physical examinations necessary for EOI will be at your expense.

KFB 13.  In the section describing "Dependent Life Insurance," participants were reminded that

> [y]our initial enrollment in dependent life insurance does not require EOI.  However, if you waive dependent life insurance coverage this year and elect it in future enrollments, you'll be required to provide EOI for your spouse or domestic partner.

KFB 15.

For the 1999 benefits year, plaintiff had elected mid-level HMO benefits and comprehensive dental for herself and Mr. Melendres, $150,000 in life insurance for herself only, and "No coverage" for dependent life insurance.  KFB 2-3.

On October 27, 1999, during the open enrollment period for electing benefits for the 2000 benefits year, plaintiff submitted an application for dependent life benefits for Mr.

3

Melendres. She received a Confirmation Statement dated November 19, 1999. KFB 2. The confirmation statement advised plaintiff that she had to submit evidence of good health to support the request for dependent life benefits, and that she should return the EOI form to MetLife "as soon as possible, but no later than 31 days from your Confirmation Statement Date to ensure timely processing of your request." She was further advised that MetLife would process requests received by the deadline, and would notify Kaiser of approval or denial within 120 days. If the forms were late, and MetLife was unable to process them within 120 days, the coverage would remain as shown (for the current year).

Plaintiff completed the EOI form and submitted it to MetLife. MET 7. In the form, plaintiff stated that she had been employed by Kaiser since August 4, 1997, that she was married to Leon Melendres, that her current coverage for dependent life insurance was "no coverage," and that she wanted $50,000 in coverage for Mr. Melendres. Id.

The EOI form asked plaintiff to provide specific medical information for Mr. Melendres. Plaintiff checked "Yes" in Box4(f), which asked whether Mr. Melendres had ever received treatment for or been told by any physician or other practitioner that he had diabetes. Id.

The EOI form was signed and dated November 22, 1999, although MetLife did not receive it until December 15, 1999. According to plaintiff, she made a phone call to MetLife on February 8, 2000, after she noticed that no deductions were being withheld from her paycheck for the dependent life coverage. She states that she was told that her request for life insurance was "under review." See MET 11.

On February 27, 2000, MetLife's Statement of Health Unit issued a letter informing plaintiff that MetLife had received her request for dependent life benefits for Mr. Melendres and that a physician's report was required so that MetLife could complete its review of her request. The letter stated,

> Please ask the appropriate physician to complete the enclosed statement and/or forward copies of medical records specifically regarding Diabetes: Type, age of onset, treatment and most recent Hgb A1C result [and a]ny other significant medical history. Any fee the physician may charge for this information is your responsibility and will not be covered under your group

4

> medical benefits plan.  The physician should sign the form and send the requested information directly to MetLife in the enclosed envelope.
>
> If we do not receive the physician's report within 60 days of the date of this letter, your request for this coverage will be considered withdrawn and your file will be closed.  If we do receive the physician's report within 60 days, we will advise you of our decision in writing.  Note that the benefits requested will not be issued unless indicated to you in writing.

MET 10.

Enclosed with the letter from MetLife to plaintiff was a two-page form entitled "Attending Physician's Statement – Underwriting Confirmation" ("APS").  MET 21-22.  Each page of the APS sets forth the name of the MetLife correspondent who signed the letter (Antoinette Owen) and indicates the same date of February 27, 2000, at the bottom.

The first page of the APS consisted of an authorization that had to be completed so that Mr. Melendres' physician could disclose the required information.  That page stated, "The employee must sign in all cases.  The person for whom coverage is being requested must also sign if not under age 14."  Since Mr. Melendres was an adult, both he and plaintiff were required to sign the authorization to release Mr. Melendres' medical information.  That page of the APS also instructed, at the bottom in bold type, "<u>UPON COMPLETION</u>, BOTH PARTS OF THIS STATEMENT SHOULD BE SUBMITTED <u>BY THE ATTENDING PHYSICIAN</u> IN THE ENCLOSED ENVELOPE TO METLIFE."  MET 21.  The second page of the APS required Mr. Melendres' physician to provide detailed information regarding his diabetes.  This part of the form was to be "completed by physician's office" and signed by the physician.  MET 22.

According to plaintiff, she received the February 27, 2000, letter on March 1, 2000.  However, she did not have the APS completed by Mr. Melendres' physician, and MetLife never received the completed APS.  On March 16, 2000, Mr. Melendres died (from gunshot wounds) in the Philippines while on a business trip.  MET 12, 17, 18.

Plaintiff's next communication to MetLife was a letter to the Insurance Claims Unit.  The letter was dated May 11, 2000, and was designated "Death Claim" on the "Re:" line.  MET 11-13.  Plaintiff wrote that Leon Melendres had died in the Philippines on March 16,

5

2000, "as the result of what I consider criminal activity while on a business trip." Plaintiff also stated that after Mr. Melendres' death, she had gone to the Philippines to wind up his affairs, and that after she returned to the U.S., on April 17, 2000, a Kaiser benefits representative had informed MetLife of Mr. Melendres' death. She stated further that she had been informed that someone from MetLife had told the Kaiser representative that Mr. Melendres was not covered by insurance. Id.

Plaintiff acknowledged that MetLife had had 120 days to act on the application for dependent life coverage,[2] but asserted that the company had unreasonably delayed in considering the claim, and indicated that her letter was a request for death benefits. She suggested that had MetLife acted more promptly, the insurance policy would have been effective as of the date of Mr. Melendres' death. She also claimed that MetLife's failure to act promptly made it "virtually impossible" that the company would have been able to meet the 120-day deadline. MET 12.

On May 17, 2000, MetLife's Statement of Health Unit (which administers insurability issues) wrote plaintiff to follow up on its letter of February 27, 2000.[3] MET 14. The letter stated, "We have not yet received a response to our 02/27/00 letter requesting a physician's report. Therefore, we are unable to process your Statement of Health." Plaintiff was asked to respond within 15 days, and was told that if she did not, MetLife would conclude that she was no longer interested in dependent life coverage.

Plaintiff responded on May 30, 2000, this time to the Statement of Health Unit. MET 2-6. She enclosed a copy of her husband's death certificate, noting that he had died a few weeks after she had received the February 27, 2000, letter (which required that she provide a physician's statement regarding Mr. Melendres' medial condition). She also enclosed a copy of her May 11, 2000, letter to the Life Insurance Claim Unit, which she described in

---

[2] 120 days from November 19, 1999 (the date of the Confirmation Statement) was March 19, 2000.

[3] This letter did not mention plaintiff's May 11, 2000, letter to MetLife's Life Insurance Claims Unit, located at a different address.

6

1  the May 30, 2000, letter as a "letter of appeal." MET 2-5.

2  On July 12, 2000, Sandra Coyne from MetLife's Statement of Health Unit issued a
3  letter in response to plaintiff's letters of May 11 and 30, 2000. MET 16. In this letter, Ms.
4  Coyne wrote,

> The statement of health was received on December 15, 1999. As there were medical conditions indicated on the form, it was necessary for an underwriter to review and make a determination as to what, if any, information was needed regarding the medical condition. On February 27th, the request for additional medical information was sent to you as it is the obligation of the applicant to provide any additional information required to make a final determination on the application. The requested medical information was not received therefore the Statement of Health Unit closed their file.
>
> The Life Claim Unit has advised that they have not declined payment of benefits, as they have not received a claim filed through Kaiser Permanente for dependent coverage for your spouse for review. A formal claim must be filed before they can make a determination on payment of benefits.

Id.

Nearly a year later, on July 2, 2001, plaintiff again wrote to MetLife's Statement of Health Unit, requesting payment of dependent life benefits. MET 8. In that letter she stated that two weeks before, she had received a verbal response from Kaiser's Benefits Department that her claim had been denied. She repeated the chronology of events described in her previous letters, and also enclosed a letter from the Embassy of the United States in Manilla and a document entitled "Report of the Death of an American Citizen Abroad."

On December 10, 2004, almost five years after her husband's death, plaintiff signed the original APS (the one she had received on March 1, 2000), authorizing health care providers to release her husband's medical records. MET 21. The form also required Mr. Melendres' signature, but in that signature block were printed the words, "Leon Melendres – Deceased." However, the portion of the form requiring the physician's statement and signature were blank. MET 22.

On January 7, 2005, plaintiff signed another authorization form requesting that a facility where Mr. Melendres had been treated for diabetes (Kaiser Medical Center) release his medical information to MetLife. MET 20. The form indicated that Mr. Melendres was

deceased. Pursuant to that authorization, the facility provided six pages of hand-written records. MET 19, 23-28. The only legible dates on the records are 1989 and 1990.

Several months later, plaintiff sent an undated letter to MetLife's Statement of Health Unit. She claimed that she had spoken to a Kaiser HR analyst in December 2004, and that the HR analyst had "verified" with MetLife that "the case will be reopened as long as the medical records of my late husband could be submitted." MET 29. She noted that her late husband's medical records had been submitted on January 7, 2005, almost 4 months previously, and that she had not heard anything. Id.

In August 2005, plaintiff resumed her inquiries about the dependent life benefits with Kaiser's Benefits Department. On August 1, 2005, she sent an e-mail to Angela Ono, Kaiser's National Health & Welfare Benefits Manager, asking about the status of her claim. KFB 88. Ms. Ono responded that "the decision of denial is upheld." Id. Plaintiff wrote back that she believed that MetLife had denied the claim because "Kaiser has not done their part." KFB 87.

On August 15, 2005, Ms. Ono responded with a lengthy e-mail in which she first detailed the steps and requirements for obtaining dependent life coverage, as set forth in the Plan documents. KFB 85-86. Ms. Ono then summarized the events relating to plaintiff's EOI application (noting that plaintiff never provided the requested information), and reviewed plaintiff's request of death claim (in which MetLife had informed plaintiff that it was unable to review her application because she never submitted the requested medical information). Ms. Ono stated that it was incorrect to say that Kaiser had failed to file the death claim with MetLife, because Kaiser could not file a death claim for a benefit that plaintiff did not have. Because plaintiff had not provided the physician medical report during the required period, the dependent EOI had expired and MetLife had closed the file. Id.

Plaintiff wrote back to say that she had consulted with Kaiser's Benefits Department "during those days of mourning on the passing of" her husband, and inquired how to process the death claim. KFB 85. She state that she was "confused" at that time as to

whether it was still necessary to submit the physician's report, in view of the fact that her husband was no longer alive. She claimed that she was "informed different ways and referred to different representatives/analyst," and that if she had been told what Ono was now telling her, "the issue would have been settled by now." She concluded with the statement that she had an appointment to discuss the matter with an attorney, and that she had "no other recourse but to bring this case against Kaiser due to employee's inefficiencies." Id. Plaintiff filed the present action on September 20, 2005.

Both sides now seek summary judgment. Defendants argue that the action is time-barred, and also assert that plaintiff cannot state a claim because there was no coverage under the Plan for the dependent life benefit. Plaintiff contends that MetLife must pay her claim because it failed to promptly process her application for dependent life benefits, and also argues that the summary plan description offers insurance for dependents without evidence of insurability. In addition, plaintiff seeks reconsideration of the court's denial (at the initial case management conference) of her request to take discovery.

**DISCUSSION**

A.  The Cross-Motions

    1.  Legal Standard

A challenge to an ERISA plan's denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is reviewed de novo unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits of to construe the terms of the plan. Aetna Health, Inc. v. Davila, 542 U.S. 200, 210 (2004); Johnson v. Buckley, 356 F.3d 1067, 1075 (9th Cir. 2004). When such discretion exists, the district court reviews the administrator's determinations for an abuse of discretion. Jebian v. Hewlett Packard Co. Employee Benefits Organization Income Protection Plan, 349 F.3d 1098, 1102-03 (9th Cir. 2003). This standard is the same as "arbitrary and capricious." Id.; see also Tremain v. Bell Indus., Inc., 196 F.3d 970, 975 n.5 (9th Cir. 1999).

Here, the Plan provides that MetLife, as the insurer and named fiduciary with regard to benefits determinations, has full and complete discretionary authority with respect to its

9

1  responsibilities under the Plan, and its actions, interpretations, and decisions are conclusive
2  and binding. KFB 95. Thus, MetLife has sole and full discretionary authority to make and
3  enforce rules for the administration of the Plan, to construe and interpret Plan documents,
4  to decide requests regarding the eligibility of any person to participate in the Plan, to
5  approve or deny claims for benefits under the Plan, and to appoint or employ others to
6  assist in the administration of the Plan. KFB 95-96.

7  Ordinarily, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ERISA actions, however, where the plaintiff is challenging the plan administrator's denial of benefits and the district court determines that the abuse of discretion standard of review applies, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).

15  Under the abuse of discretion standard, the issue before the court is not whether MetLife reached the "correct" decision; the issue is whether there is substantial evidence in the record to support MetLife's decision. Snow v. Standard Ins. Co., 87 F.3d 327, 331-32 (9th Cir. 1996) (decision is supported by "substantial evidence" where there is relevant evidence that reasonable minds might accept as adequate to support conclusion, even if two inconsistent conclusions can be drawn from evidence), overruled on other grounds, Kearny v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999). Even decisions directly contrary to evidence in the record may not necessarily amount to an abuse of discretion. Taft v. Equitable Life Assur. Soc., 9 F. 3d 1469, 1473 (9th Cir. 1993).

24  An ERISA administrator abuses its discretion only if it renders a decision without explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. Bendixen, 185 F.3d at 944; Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323-24 (9th Cir. 1995). The district court should uphold the decision of an ERISA plan administrator "if it is based upon a reasonable

1  interpretation of the plan's terms and was made in good faith." Boyd v. Bert Bell/Pete
2  Rozelle NFL Players Retirement Plan, 410 F. 3d 1173, 1178 (9th Cir. 2005) (quotations and
3  citations omitted). The court may not substitute its judgment for that of the administrator
4  unless the latter's decision was clearly erroneous in light of the available record, or there
5  was no reasonable basis for it. Bendixen, 185 F.3d at 944.

       2.       The Parties' Motions

Defendants argue that summary judgment should be granted in their favor because the action is time-barred, and because plaintiff's husband was not covered by dependent life insurance. Because the court finds that there was no coverage, this opinion does not address the question whether the action was time-barred.

Defendants assert that Mr. Melendres was not enrolled for coverage prior to his death because MetLife did not receive the signed APS; that MetLife acted within its discretion to require additional evidence of good health, and in closing its file when none was provided; and that plaintiff was not excused from compliance with Plan requirements.

Plaintiff concedes that the APS was never completed, but argues that "the delay in processing the application" arose because MetLife improperly imposed "a requirement that the dependent spouse prove he was insurable." She quotes the "Benefits by Design" decision kit for 2000, which stated under "Dependent Life Insurance," that

> [y]our initial enrollment in dependent life insurance does not require EOI. However, if you waive dependent life insurance coverage this year and elect it in future enrollments, you'll be required to provide EOI for your spouse of domestic partner.

KFB 0015. She claims that the clause "if you waive dependent life insurance coverage this year " should be interpreted as meaning that there would be no EOI required for dependent life coverage in 2000, and that an EOI would be required only if dependent life coverage were elected in subsequent years.

Plaintiff acknowledges that the insurance policy issued to Kaiser does require EOI to add dependent coverage, but argues that she is entitled to rely on the summary plan description (referring to the "Benefits by Design" decision kit), since that creates the terms

11

of the Plan.  She contends that where an employer publishes an inaccurate summary plan description, and a beneficiary relies on that description to her detriment, the employer is bound by the inaccuracy.  She asserts that in this case, MetLife should have processed the policy without requiring any evidence of insurability, and that if it had, the policy would undoubtably have been in place before her husband died.  She argues that MetLife is liable for payment under the policy because it failed to process the application in a timely fashion.

The court finds that defendants' motion must be GRANTED, and that plaintiff's motion must be DENIED.  Plaintiff never addresses the threshold issue – the fact that her husband was not enrolled for dependent life coverage – and instead focuses her attention on the question whether she submitted a "formal claim" for payment of insurance benefits.  The administrative record shows that MetLife timely processed the application documents that plaintiff submitted.  The Plan documents expressly provided MetLife with 120 days from the date of plaintiff's Confirmation Statement to process her application for dependent life benefits.  KFB 2, 15).  Even if plaintiff had submitted all the required documentation to complete her application, MetLife would have had until at least March 19, 2000 to determine whether coverage would be offered to plaintiff's husband.

Plaintiff expressly acknowledged in her letter of May 11, 2000, that she was aware of the 120-day deadline (though she believed it started on the day MetLife received the EOI (December 15, 1999) rather than on the date of the Confirmation Statement (November 19, 1999).  MET 12.  MetLife's request for additional medical documentation regarding Mr. Melendres' diabetic condition was made on February 27, 2000, well within the applicable timeframe.  Because plaintiff never supplied the required information, the application was incomplete when Mr. Melendres passed away on March 16, 2000.  Thus, there was no coverage.

The Plan documents plainly required plaintiff to provide satisfactory EOI to support her application for dependent life benefits.  Under the terms of the Plan, plaintiff could request dependent coverage only at certain times – within 31 days of a qualifying event, such as marriage or the birth of a child, or during open enrollment periods designated by

12

her employer. KFB 34-35, 38. If plaintiff had requested dependent life benefits for Mr. Melendres during the initial eligibility period, an EOI would have been required only if Mr. Melendres had been hospitalized during the three months preceding the application, or was unable to perform normal activities. KFB 34, 38-39. Because plaintiff requested "no coverage" during the initial period, however, and requested dependent life benefits during an open enrollment period after the initial eligibility period, EOI was required for Mr. Melendres. See KFB 38.

The record does not support plaintiff's interpretation of the meaning of the phrase "this year" in the sentence, "However, if you waive dependent life insurance coverage this year and elect it in future enrollments, you'll be required to provide EOI for your spouse or domestic partner." That sentence – beginning with "However" – is preceded by the sentence, "Your initial enrollment in dependent life insurance does not require EOI." The two sentences must be read together. MetLife reasonably interpreted the two sentences as meaning that EOI for dependent life coverage is not required at initial enrollment, but if dependent life coverage is waived at that time, and thereafter elected in a future open enrollment, EOI for the spouse will be required.

Moreover, MetLife reminded plaintiff of the EOI requirement several times. The November 19, 1999, Confirmation Statement expressly notified plaintiff that she had to submit EOI to support her application, and plaintiff did in fact complete and return the initial EOI form. Based on plaintiff's disclosure that Mr. Melendres had been treated for diabetes, MetLife set plaintiff a request for medical documentation of Mr. Melendres' diabetic condition. Plaintiff never caused the completed forms to be returned to MetLIfe, and thus her application was never completed before Mr. Melendres died.

MetLife did not abuse its discretion in interpreting the Plan as requiring plaintiff to provide satisfactory EOI to support her application for dependent life benefits. Plaintiff's argument that MetLife "unreasonably delayed" processing the application is without merit. Plaintiff may wish that MetLife had acted more promptly, but the terms of the Plan did not oblige MetLife to do so.

13

B.   Plaintiff's Request for Reconsideration of the Order Denying Discovery

Plaintiff argues that she is entitled to discovery, first, to show that the individuals with whom she was dealing at Kaiser are personnel whose conduct is "legally chargeable to the Plan," and that her delay in filing suit was caused by the failure of individuals in the Kaiser benefits department to provide her with prompt assistance; second, to show that she completed the forms she was directed to complete by the Kaiser benefits department, and that her failure to complete the APS was caused by confusion created by the benefits department; and third, to show that MetLife "unnecessarily delayed" the processing of her application for coverage.

The abuse of discretion standard permits the district court to review only the evidence presented to the Plan trustees.  Taft v. Equitable Life Assurance Soc., 9 F.3d 1469, 1471 (9th Cir. 1993); see also Tremain, 196 F.3d at 976 (court may consider only administrative record when reviewing benefits decision for abuse of discretion); McKenzie, 41 F.3d at 1316 (under abuse of discretion standard, district court may review only evidence which was presented to plan trustees or administrator).  A majority of courts of appeal have taken the same position.  See, e.g., Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002) (citing cases); Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2nd Cir. 1995) (same).  By contrast, where the standard of review is de novo, most circuits allow the admission of additional evidence – beyond what is contained in the administrative record – in limited circumstances.  See Hall, 300 F.3d at 1201-02 (citing cases).

In Tremain, the Ninth Circuit also held that the district court could consider evidence from outside the administrative record on the question whether the administrator's conflict of interest affected its decision to deny benefits to the claimant, distinguishing that inquiry from the actual review of the benefits decision.  "That is a threshold issue which must be decided before a court can determine what standard of review to apply to a plan administrator's benefits decision.  Taft does not preclude the consideration of such evidence."  Tremain at 977.  Further, in the event that the standard of review is determined

to be <u>de novo</u>, the district court can consider evidence outside the administrative record "when that evidence is necessary to conduct an adequate de novo review of the benefits decision." <u>Id.</u> at 978 (citation and quotation omitted).

Here, because the Plan documents grant MetLife discretionary authority, this court is limited to reviewing the record that was before the fiduciary at the time of its decision. Plaintiff does not dispute that the standard of review is abuse of discretion, and does not point to any evidence of a conflict of interest, sufficient to warrant discovery on that issue. Moreover, none of the three areas as to which she seeks discovery has any bearing on the outcome of the present action. Accordingly, the court finds that the motion must be DENIED.

With regard to the first issue – delay in filing suit – the court has determined that defendants' motion must be granted because there was no dependent life coverage in effect as of the date Mr. Melendres' death. The facts surrounding the timing of the filing of this action bear no relationship to the finding that there was no coverage.

With regard to the second area – compliance with Plan requirements – the record shows that plaintiff received a letter from MetLife dated February 27, 2000, requesting a physician's statement regarding her husband's diabetes and enclosing a form for his doctor to complete and sign. However, plaintiff did not provide the EOI that was required to complete her application for dependent life benefits before her husband died. Evidence regarding any subsequent interactions plaintiff may have had with Kaiser's benefits department is irrelevant.

With regard to the third area – delay in processing forms – the court has determined that MetLife processed the forms submitted by plaintiff within the time-frames set forth in the Plan documents. Evidence regarding the reasons for the "delay" between the time MetLife received plaintiff's initial EOI (December 15, 1999), and the time MetLife requested completion of the APS (February 27, 2000) is irrelevant, as MetLife was in compliance with its requirements under the Plan.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS defendants' motion for summary judgment and DENIES plaintiff's motion for summary judgment and motion for leave to conduct discovery.

**IT IS SO ORDERED.**

Dated: August 11, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge